This was a bill filed for the settlement of an estate, and the case turned chiefly on questions of depreciation— Some of the transactions of the executor being before, and some during the depreciation of the paper money during the revolutionary war.
The annual balances before the war, were uniformly and largely in favour of the estate, and for a year or two after. The balances during the rest of the war, and the depreciation, were in favour of the executor; but this was produced chiefly by his paying large orders of Mr. Stock, who, though a legatee and heir of the estate, was a minor.
The first point made by the counsel for the complainant was, that neither the will of the testator nor the law sanctioned the acting executor in permitting such an un-experienced heir, legatee and executor as John Stock, who was actually a minor, to draw such large sums out of his hands, and thus diminishing the executor’s debt to the estate. There was also another question' — Whether the executor was liable to pay interest on the balances in his hands at the end of the year.
The case came to a hearing on the 12th of July, 1791, and was argued by Mr. Pringle and general Pinckney for complainant, and by Mr. Holmes and Mr. E. Rutledge for defendant.
On the question of interest, the counsel for complainant, argued, that it would be just and reasonable that interest should be allowed by the defendant. He was executor of the estate, aud at tlie same time engaged in the factorage business, and the crops of the estate were sent to his factorage house: That they sold the crops, and there were, large balances at the end of several years in their hands. It was the duty of the executor to have taken those balances and paid the debts of the estate, if any, and if none to have put the money out to interest. He had done, neither; nay, kept it in the hands of his factor-age concern, .and made that neglect the foundation of a *192 claim tb connect those undepreciated balances with running accounts subsequent to the commencement of the depreciation, and take the ultimate balance, and depreciate that, which woxdd be a great, and unjust loss to the complainants. As to executors and trustees being bound to put money out to interest, or being liable to pay it, the counsel cited 1 Vesey, 407. Brown vs. Pring. 1 Vern. 197. 1 Eq. Cas. abr. 238. 3 Bro. Par. Cas. 319.
a. b. p.286; 290,2.
The defendant’s counsel insisted, that it was the custom todet balances remain in factor’s hands from year to year: And the l’xile of this coxu’t was not to charge executors with interest; at all events only where they made interest — which the executor had not done in this case: That the balance of .account, before depreciation was transferi'ed to the next years’ accounts and mingled with them — of course the last balance must be depreciated.
The couid said, there were two questions, viz. 1st, Whether the. balances on accounts for 1775 and 6 (previous depreciation) shoxxld be accounted for in specie, or the whole looked upon as a running account from the death of the testator to the close of the transactions in 1779; and, 2dly, Whether any and what interest should be allowed.
If this were a case between persons of full age, of mutual dealings before and subsequent to depreciation, there would be little difficulty; but this is a case where defendant is executor and factor of an estate, with which he has accounts, which makes it diffiment from all other cases. In 1775 and 6 there were large balances in defendant’s hands, where they remained till November, 1779. John Stock, whom complainant represents to have been a minor, drew large sums fi’om the executor, which changed the balance. The court is guardian, and will not suffer him to be prejudiced by acts in his minority. It was not just in the executor to apply specie funds to discharge the depreciated balance of 1779. It was unjust to close the accounts in November, 1799, for the purpose of raising a balance to wipe off the specie fund. — 2d, As to interest— No law obliges the exeexxtor to place money out at interest; and no authority was given to do so in this will— *193 'The profits were bequeathed to complainant, therefore no interest to be charged.*
pFonbl.ch 7, § 6, p. 188, IstLoud. Ed-
It was therefore decreed, that it be referred to the master to examine the accounts of the defendant, and to state the balance due thereon at the end of every year anterior to any depreciation: That as to the remainder of the said accounts, the master do only depreciate the sum *194 due on the last balance, and report the same to the coul% That such balances, when liquidated, shall be paid in specie by defendant to complainant, in equal proportions, in one, two and three years, together witli the annual interest to grow due thereon: And lastly, that defendant do pay the costs of this suit.
Pringle and general C. C. Pinckney for complainants. Holmes and E. Rutledge for defendant.
a. s. p. 292.
The master afterwards made bis report conformably to the above principles; which was confirmed.

 This certainly appears to have been the old law. It is so stated expressly in the text attributed to Mr. Ballow, to which Mr. Fon-blanque has attached his valuable notes. After stating that a bailiff who is charged as receiver ad computandum, shall answer only for the money, or tiling delivered, without increase or profits, he adds, — “ So in chancery, an executor or trustee not being bound to lend, if he do lend it is at his own peril; and if it be by that means lost, he shall an-swerthe same out of his own estate; and therefore, as he shall bear the loss, ho shall have the gain.” And he says, “ This is a fixed rule of the court, and they will not change it, even where the executor calls in tlie money on good security.”
Mr. Fonblanqne expresses his astonishment that such a principle should ever have had the weight which it appears to have received in some cases. 2 Chan. Cas. 35,152. 1 Vern. 197. 2 Atk. 106, Adams vs. Gale; and 2 Atk. 603, Child vs. Gibson. There were, however, cases decided differently, even at that time. See 1 Vern. 196, Radcliffe vs. Graves; 2 Vern. 548, Lee vs. Lee. And lord chancellor Thurlow solemnly considered the subj cct, and denied the old rule to be the law of the court. See 1 Bro. C. C. 359, Newton to. Bennet. So that an executor or trustee may now be considered as chargeable with interest, when he appears to have made interest. See 1 Bro. C. C. 375, Perkins vs. Bayntum. 1 Bro. C. C. 384, Treves vs. Townsend. And lie shall not only be chargeable with interest, but if he appear to have employed his trust money in trade, whence he has derived profits, beyond the rate of interest, he shall account for all such profits. See 2 Bro. C. C. 430, Forbes to. Ross. And it has been further held, that, if a trustee or executor retain money in his hands (unnecessarily) for any length of time, which he might by application to the court, or by vesting in the funds, have made productive, he shall be charged with interest thereon. 2 Vern. 744. 1 Bro. C. C. 375, Perkins vs. Bayntum. 3 Bro. C. C. 73, Littlehales vs. Gascoigne. Ibid. 433, Franklin vs. Frith, And an executor vesting money in the funds, and appropriating' the same, shall not be liable to the fall of Stocks. See exparte Champion, cited in Hutcheson vs. Hammond. 3 Bro. C. C. 147.
The later decisions of our own court of chancery have been conformable to these decisions; and interest is chargeable to executors and trustees, wherever there were disposable funds of the estate in their hands, which the exigencies of the estate did not prevent being placed out at interest. Vide postea, case of executors of Gadsden \s. executors of Lord, and other cases